DRUMMOND *vs.* WESTERVELT.

A general demurrer will not lie to a bill which presents a case in which the legitimate proof may be such as to call for a decree in favor of the complainant.

On bill and demurrer.

*Mr. W. J. Magie*, for the demurrer.

*Mr. Griggs*, contra.

THE CHANCELLOR.

The bill is filed against John Westervelt and William Westervelt, his father, to compel a conveyance to complainant, or to the firm of which he was and is a member (Westervelt and Drummond), of certain land in Rutherford Park, in this state. It alleges that the complainant and John Westervelt, on the 15th day of February, 1871, entered into partnership as builders; that on the 21st day of March, 1871, the firm entered into a contract with Thomas Beatty to do all the carpenter work, they furnishing all the materials therefor, for three brown stone front dwelling-houses he was about to build in the city of New York; that they were to take their pay, $8400, in one of the houses and the lot on which it stood, valued at $14,074, on which, for the difference, $5674, they were to give Beatty a mortgage.

That having completed the work, but not having received a deed from Beatty for the property he had so agreed to convey to them, they made a contract in writing with one William Higgins for the conveyance to him of that property, for the price of $15,500, to be paid in the conveyance to the firm, of a certain house and land in Rutherford Park, and $2400 in cash.

That December 21st, 1871, John Westervelt, secretly and without complainant's knowledge or consent, and against his wish, procured Higgins to convey the Rutherford Park property to his father, William Westervelt, who, ever since then, has claimed to own it, and has had it in possession.

That afterwards, John Westervelt absconded, having previously received the $2400 from Higgins, and having obtained a large sum of money on the credit of the firm, and giving the firm's note as security for the money, and having collected

from various sources about $500 of the firm's money, which he also appropriated to his own use.

· That the complainant has been compelled to discharge the liabilities of the firm, and that the whole amount of the clear value of the Rutherford Park property would be barely sufficient to make up to him his loss occasioned by the above mentioned fraudulent conduct of his partner; and that on the 6th day of January, 1872, John Westervelt gave an order in the name of the firm, by which the house and lot in New York were conveyed directly to Higgins.

The bill charges that the conveyance to William Westervelt was in fraud of complainant's right as a member of the firm; that it was brought about and procured to be done at the instigation and by the means of John Westervelt, and was done with the intent and purpose, on his part, of cheating and defrauding the complainant, and of putting the property of the firm in such a condition that the complainant could not control it, or obtain his share of it; and that for that purpose, John Westervelt conspired and colluded with William Westervelt, and by false statements and misrepresentations, and without authority, induced Higgins to convey the Rutherford Park property to the latter instead of to the firm, as by his agreement he was bound to do.

William Westervelt has filed a general demurrer to the bill.

The demurrer being general, can only be allowed in case the bill is defective for want of equity. It does not seem to me to be so. It presents a case in which the legitimate proof may be such as to call for a decree in favor of the complainant. In such case a general demurrer will not be allowed. *Brooke* v. *Hewitt*, 3 *Ves.* 255; *Vail's Executors* v. *Central R. R. Co.*, 8 *C. E. Green* 466.

The bill states substantially, that the defendants, John Westervelt and William Westervelt, conspired and colluded together with the intent and purpose of putting the property beyond complainant's reach, and of cheating and defrauding him out of his interest in it. This special charge of con-

spiracy and collusion, as against William Westervelt, is equivalent to the statement, that with full notice of the complainant's equity in the property, he fraudulently and with a view to cheating him out of it, and for that purpose, took title to it from Higgins. If he did, the complainant is entitled to the relief he seeks. " Collusion between two persons, to the prejudice and loss of a third, is," said Lord Hardwicke, in *Garth* v. *Cotton*, 1 *Dick.* 218, " in the eye of the court, the same as a fraud." The character of the transaction is such as to induce the suspicion, to say the least of it, of fraud on the part of the defendant, William Westervelt. The defendants were father and son. It is possible, but hardly probable, that the latter imposed upon the former; that the fraud was all on one side, and the father was wholly ignorant, not only of his son's designs in the transaction, but also of the complainant's interest in the property. The charge of conspiracy and collusion made in this connection, forbids the assumption that the father was a *bona fide* purchaser, or that he was a purchaser without notice of complainant's equity. As made in this bill, it imports bad faith and notice of complainant's rights.

The demurrer is overruled, with costs.